**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **ANTHONY JOHNSON,** | § | **CIVIL ACTION NO.** |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Jury Demanded** |
| | § | |
| **FEDERAL EXPRESS** | § | |
| **CORPORATION** | § | |
| **RICKY L. CARTER, AND** | § | |
| **PATRICK ELAM** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF, ANTHONY JOHNSON'S ORIGINAL COMPLAINT**
**AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **Anthony Johnson**, (or "Plaintiff") hereinafter called Plaintiff, complaining of and about **Federal Express Corporation** ("Defendant-FedEx", "Federal Express", or "FedEx"), **Ricky Carter** ("Defendant-Carter"), and **Patrick Elam** ("Defendant-Elam") (all defendants herein collectively referred to as the "Defendants") and for cause of action shows unto the Court the following:

## PARTIES AND SERVICE

1.     Plaintiff **Anthony Johnson** is a citizen of the United States and the State of Tennessee and resides in Shelby County, Tennessee.

2.     Defendant **Federal Express Corporation**  is a Delaware corporation doing business in Memphis, Shelby County, Tennessee, and may be served with citation by serving its registered agent, **C T CORPORATION SYSTEM, 800 S GAY ST, STE 2021, KNOXVILLE, TN 37929-9710 USA.**

3.      Defendant **Ricky Carter** is an individual who, on information and belief, resides in Arlington, Tennessee, and may be served by serving him at his place of residence at **10400 Twisting Pine Ln, Arlington, TN 38002**.  Ricky Carter may also be served at his place of employment at 2903 Sprankle, Memphis, TN, 38118.

4.      Defendant **Patrick Elam**  is an individual who, on information and belief, resides in Collierville, Tennessee, and may be served by serving him at his place of residence at **1379 Winoka RD, Collierville, TN 38017**.  Patrick Elam may also be served at his place of employment at 2903 Sprankle, Memphis, TN, 38118

## JURISDICTION AND VENUE

5.      The action arises under Title VII of the Civil Rights Act as hereinafter more fully appears.

6.      This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

7.      Venue is appropriate in this Court because the violations asserted in this action occurred predominately in Memphis, Tennessee.

## NATURE OF ACTION

8.      This is an action under Title 42 U.S.C. Section 2000e et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and color. This is also an action under Section 704(a) of Title VII, as amended 42 U.S.C. § 2000e-3(a) which protects employees from retaliation brought on by employers against employees (a) who participates in a statutory protected activity or (b) who opposes a company's practices. This is also an action for claims for negligent hiring, breach of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, hostile work environment, supervisor harassment, defamation of character, and a request for

exemplary damages.

## CONDITIONS PRECEDENT

9.      The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

10.     All conditions precedent to jurisdiction have occurred or been complied with: (a) all of FedEx's internal equal employment opportunity proceedings have occurred and have been fully exhausted, (b) a charge of retaliation and discrimination was filed with the Equal Employment Opportunity Commission, and (c) Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## INTRODUCTION

11.     The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

12.     This lawsuit is about Anthony Johnson who Defendants discriminated against, retaliated against him, and ultimately was wrongfully terminated him in retaliation for his filing a workplace violence complaint against a White senior manager, and for standing up as an African American against Federal Express's discriminatory practices.

## FACTS OF THE CASE

13.     Federal Express Corporation is in the business of transporting packages from locale to locale.

**Racially Hostile and Insensitive Environment:**

14.     For several years, Federal Express has maintained a culture and pattern of racial hostility against African American and other minorities.

15.     This pattern and culture of workplace hostility did not stop with racial insensitivity, it also touched on insensitivity in the area of age discrimination.

16.     Tim Wertner formerly worked for Federal Express in California.

17.     Tim Wertner was transferred to Federal Express in Memphis, Tennessee where

he currently works as a vice president of the company.

18.    During Tim Wertner's first all management night-side meeting, he commented that "… we've got a lot of people around here who are over 50 and need to retire so we can get some  young bloods in here" or words to this effect.

19.    Additionally, on several occasions, Federal Express made comments suggestive of the need to make certain changes affecting race and age.

20.    Such unchecked and uncorrected attitudes among Federal Express's high ranking official enabled an environment that was prone for the type of discrimination and retaliation taken against Anthony Johnson.

**Plaintiff, Manager, Anthony Johnson:**

21.    Anthony Johnson is a 51 year old well educated African American man.

22.    On or about, June 13, 1994, Federal Express hired Anthony Johnson as a material handler/driver at the JMD station in Irving, Texas.

23.    On or about 1996, Federal Express promoted Anthony Johnson from material handler/driver to RTD driver at the DFWRT ramp.

24.    In his positions as material handler/driver to RTD driver, Anthony Johnson worked at various locations in the Dallas, Texas area.

25.    On or about March 1999, Federal Express transferred Anthony Johnson to Lubbock, Texas, and promoted him to operations station manager, grade 25.

26.    On or about September 2000, Federal Express transferred Anthony Johnson to Memphis, Tennessee and promoted him to operations hub manager, grade 26.

27.    While working as operations hub manager in Memphis, Tennessee, Anthony Johnson worked under the following supervisors:

    a.  Senior Manager Derwin Ellis,

    b.  Senior Manager Terry Brown,

    c.  Senior Manager Anita Grant,

    d.  Senior Manager Donaldson Twyman,

e.  Senior Manager Terrell Johnson,

f.  Senior Manager Debra Lowrey,

g.  Senior Manager Clydia Phillips,

h.  Senior Manager Ricky Carter  (from May 1, 2012 to April 19, 2013); and

i.  Senior Manager Patrick Elam (from April 21, 2013 to May 22, 2013).

28.  Throughout Anthony Johnson's entire tenure at FedEx, he was well known as:

a.  A hard worker;

b.  A manager who dealt fairly with workers under his care and supervision;

c.  A man of integrity, truth, and honesty;

d.  One of the best trainers for new managers;

e.  One of the best trainers for new hired employees;

f.  One who enhanced the morale of his team members and others by focusing on how to increase production to meet the demands of the customer;

g.  One who oversaw the freight in a matter manner to get it out in a timely fashion to meet deadlines;

h.  One who helped others managers when their staffing was short by loaning out his team members to them;

i.  One who implemented a solution to a problem when the document system went down. For example, on one night when the system went down, Anthony Johnson devised a system for his workers to sort freight by hand so that customers could get their packages the next day on time.;

j.  One who, for example, when freight was backed up, would roll up his sleeves and join his team to distribute the freight to assure that it was delivered on time;

k.  One who, for example, when mechanical problems arose affecting other areas and other managers, he would assist the other managers in moving their freight.;

l.  One who kept his team members informed of the goals and expectations to "make good the purple promise.";

m.  One who was always professional and who showed respect to his managers and team members; and

n.  One who managed several areas on the floor when other managers were on vacation or on their scheduled days off, or when groups had no managers which occurred sometimes for months.

o.  One who took a critical operation and turned it around to be the 2nd best;

p.   One who received an award of the Manager of the quarter, second quarter 2012;

q.  One who surpassed the 2013 FedEx SFA leadership goal with a score of 95%; and

r.  One whose performance reviews were well above satisfactory.

**Defendant, Senior Manager, Ricky Carter:**

29.    Ricky Carter is a White male manager at Federal Express.

30.    On or about May 1, 2012 to April 19, 2013, Ricky Carter was Anthony Johnson supervisor and manager.

31.    During all periods of time relevant to this lawsuit Ricky Carter was a senior manager over the 2nd floor in the SPSS building.

32.    In April 2013, Ricky Carter was a senior manager over the 1st floor in the same building.

33.    Ricky Carter is well known at FedEx's Hub for being unfair to African Americans and preferential to Whites over African Americans.

34.    In fact, on numerous occasions, and under numerous types of circumstances, Ricky Carter took the following discriminatory and/or retaliatory adverse actions against African American employees:

a.  Discriminating against African American employees in scheduling of vacation;

b.  Discriminating against African American employees in terms of scheduling which employees would be required to work on Sundays;

c.  Discriminating against African American employees in terms of which employees

would be allowed to leave the work area during operation hours;

d. Discriminating against African American employees in terms of which employees would be allowed to leave work and go home before 6:00 am;

e. Discriminating against African American employees in terms of which employees would be allowed to take smoke breaks during operation hours;

f. Discriminating against African American employees in terms of which employees would be allowed to pick up employees uniforms during operation hours;

g. Discriminating against African American employees in terms of which employees would not be required to work the Sunday before or after their vacation;

h. Discriminating against African American employees in terms of which employees were not required to request approval to leave after their work was done;

i. Discriminating against African American managers by requiring them to perform hourly duties that were not usually handled by managers of at their level.

j. Discriminating against African American managers by requiring them to perform hourly duties during sort; and

k. Restricting African American managers from standing in a group and talking to each other during operation hours.

35.    Ricky Carter is also well known for being a micro manager and well known for creating and implementing practices that were not necessarily sanctioned by Federal Express.

36.    Ricky Carter is also well known at FedEx as being a senior manager who is belligerent, coercive, intimidating, and abusive to people who do not see things the way he does and/or those who disagree with him on issues that he feels strongly about.

37.    Ricky Carter is particularly this way against African American employees who

disagree with him.

38.    Ricky Carter is also well known as a senior manager who retaliates against employees, especially African American employees, who disagree with him or who do not handle matters in the manner directed by him.

39.    Consistent with Ricky Carter's pattern and manner of conduct, he supported, orchestrated, and/or approved the termination of Anthony Johnson on the basis of Anthony Johnson's race.

**Defendant, Senior Manager, Patrick Elam:**

40.    Patrick Elam, an African American male.

41.    During all periods of time relevant to this lawsuit, Patrick Elam was a senior manager over the 2nd floor in the SPSS building.

42.    Patrick Elam is well known at FedEx Memphis Hub as a senior manager who protects and advances his own personal interests as a priority over the interests of others.

43.    Patrick Elam is also well known as an African American who will support FedEx's discriminatory adverse and retaliatory actions against the interest of African American employees.

44.    Patrick Elam is also well known as an African American manager that FedEx uses to terminate and/or take adverse actions against other African Americans (and minorities) when the company wishes to avoid the appearance of race discrimination.

**Federal Express's Electronic Complaint System:**

45.    Federal Express purports to be a company that protects the safety of its workers, and does not tolerate workplace violence.

46.    In fact, FedEx has a means of electronically filing workplace violence complaints through the use of the company's computer system.

47.    Employees are encouraged to use this system when the feel that they have been threated or subjected to workplace violence.

48.     When this electronic filing system is used, the complaint is sent directly to Federal Express's corporate offices and handled as a priority issue of concern.

**Anthony Johnson's Workplace Violence Complaint:**

49.     On or about May 2012, FedEx Senior Manager Joe Russell, a White male, put his finger in Anthony Johnson's faces in a threatening manner.

50.     Thereafter, on or about May 2012, Anthony Johnson electronically filed a workplace violence complaint against Joe Russell.

51.     Shortly after filing his complaint, Anthony Johnson told his senior manager, Ricky Carter that he (Anthony Johnson) filed a workplace violence complaint against Joe Russell.

52.     Anthony Johnson also informed Ricky Carter why he filed the complaint.

53.     Ricky Carter disagreed with Anthony Johnson for having filed the complaint electronically.

54.     Ricky Carter stressed that he preferred to handle this matter "in house" and that Anthony Johnson should not have filed the complaint in the manner that he did.

**Ricky Carter's Retaliation and Discrimination against Anthony Johnson:**

55.     Approximately two weeks later, on or about May 30, 2012, Ricky Carter wrote Anthony Johnson, by issuing him a Performance Reminder for Leadership Failure.

56.     The Performance Reminder was not an action that Ricky Carter would have taken had Anthony Johnson never electronically filed his workplace violence complaint.

57.     The Performance Reminder issued against Anthony Johnson was in retaliation of his electronically filing his workplace violence complaint against Senior Manager Joe Russell, a White male employee of Federal Express.

58.     But for Anthony Johnson's filing his workplace violence complaint against a White employee who put his finger in Anthony Johnson's face and threatened him with violence, Ricky Carter would not have written Anthony Johnson up on this occasion.

59.     In fact, prior to this Performance Reminder ("Write-Up"), except for one incident

that occurred about six years prior, Anthony Johnson had never been written up for anything major or issued a Performance Reminder.

60.     Ricky Carter took this adverse actions in retaliation for Anthony Johnson filing his complaint related to workplace violence.

61.     From that point forward Ricky Carter, Patrick Elam, and Federal Express continued to retaliate and discriminate against Anthony Johnson in an effort to discourage him and to ultimately terminate him.

62.     On or about December 12, 2012, Ricky Carter issued Anthony Johnson another Performance Reminder (Write Up).

63.     However, this write-up was overturned in Step 1 of FedEx's internal Guarantee Fair Treatment Process (also known as GFTP).

64.     Contrary to FedEx's policies, and in continuation of FedEx's retaliation against Anthony Johnson, Ricky Carter failed and refused to remove this Write-Up from Anthony Johnson's Prism file.

65.     In December of 2012, Anthony Johnson filed a FedEx internal EEO against Ricky Carter regarding how Ricky Carter had been treating him.

66.     Federal Express has a strong policy against employees smoking on the job except for during employee break time, and in designated smoking areas.

67.     In March 2013, Ricky Carter was informed by Jacqueline Payne, an employee working under Anthony Johnson, that r manager, Kristi Flowers, a White female under Ricky Carter's supervision, often smoked in the ladies restrooms.

68.     Various employees working under Anthony Johnson's supervision often witnessed Kristi Flowers smoking in the ladies restrooms.

69.     Ricky Carter took no action regarding Kristi Flower's misconduct.

70.     On or about April 2013, Anthony Johnson reported Kristi Flowers' misconduct of smoking in the restroom to Memphis Hub Human Resource Advisor, Don McDougall.

71.     After reporting the incident, Ricky Carter wrote Anthony Johnson up by issuing

him a written counselling (OLCC) titled conduct for violating the 2-5 Acceptable Conduct
Policy.

72.     During Anthony Johnson's meeting with Ricky Carter, Mr. Carter called him a
"trouble maker."

73.     Ricky Carter also stated to Anthony Johnson's peer manager, Rickey Hobson
that Anthony Johnson was a "trouble maker."

74.     Anthony Johnson did not violate this policy and did nothing wrong.

75.     Ricky Carter's adverse actions as articulated above were in continuation of his
retaliation and discrimination against Anthony Johnson.

76.     Neither Ricky Carter nor Federal Express have a legitimate nondiscriminatory
and non-retaliatory reason for the adverse actions taken against Anthony related to his
reporting Kristi Flowers' smoking in the ladies' restroom.

77.     Immediately thereafter, Anthony Johnson requested and was granted a meeting
with MD Cheri Theil and FedEx's HR Advisor, Don McDougall.

78.     During this meeting Anthony Johnson wanted it documented that the OLCC was
unfair, harassment, and retaliatory.

79.     Anthony Johnson requested that the OLCC be removed from his PRISM
(personnel file).

80.     During this meeting, Anthony Johnson also stated that the actions that were
being taken against him by Ricky Carter were done in an effort to set him up to
terminate him, and that he felt the next action would be the actual termination.

81.     Notwithstanding what Anthony Johnson told Federal Express's HR advisors, the
company continued to allow Ricky Carter to retaliate and discriminate against Anthony
Johnson, and the company continued to fail and refuse to adequately supervise Ricky
Carter.

82.     On or about April 21, 2013, Federal Express removed Ricky Carter from the
senior manager position on the 2nd floor, and replaced him with Senior Manager Patrick

Elam.

83.     Federal Express replaced Ricky Carter with Patrick Elam in pursuit of FedEx's and Ricky Carter's plan to fire Anthony Johnson in a manner that, on its face, did not appear to be motivated by race, discrimination, or retaliation.

84.     During this time, on or about April 21, 2013, Anthony Johnson was on vacation.

85.     On or about April 28, 2013, when Anthony Johnson returned to work from his vacation, he was then under the direct supervision of Patrick Elam.

86.     On or about April 30, 2013, after having returned to work for about three days, Patrick Elam suspended Anthony Johnson pending an investigation of the situation.

87.     Unable to find a legitimate reason to terminate Anthony Johnson other than the bogus claim that he had misused the NETtime system, on or about May 9, 2013, Patrick Elam extended Anthony Johnson's suspension pending further investigation of the situation.

88.     On May 22, 2013, Anthony Johnson was terminated by Patrick Elam for allegedly changing employees' NETtime scheduled start time to match their actual clock-in time.

89.     To make Anthony Johnson's termination appear to be legitimate and non-discriminatory and non-retaliatory, Patrick Elam, with Ricky Carter's and Federal Express's full knowledge and support, conducted a three day audit of time record reports.

90.     Had Patrick Elam conducted a six month audit, Federal Express would have had to terminate several employees, including White employees, in order to terminate Anthony Johnson in a manner that appeared to be legitimate, non-retaliatory, and non-discriminatory.

91.     In fact, had Patrick Elam conducted a six month audit, the result would have brought attention to Ricky Carter management style and would call demonstrated that what Anthony Johnson did was (a) not only consistent with what he was instructed to do by Ricky Carter, but (b) would have also established that Anthony Johnson's actions

were common among all of the manager working under Ricky Carter's and other senior managers at Federal Express.

92.     In essence, a six month audit would have required Federal Express to terminate Ricky Carter, several other senior manager (both African American and non-African American), and several other managers who followed Ricky Carter's and other senior managers instructions concerning NETtime and employee record keeping.

93.     However, with the three day audit that Patrick Elam conducted, Federal Express was able to avoid terminating any White employee and limit its terminations to Anthony Johnson and three other minority employees.

94.     Federal Express's stated reason for terminating Anthony Johnson is a pretext used to cover up Federal Express's true reasons for terminating him.

**Pretext for Covering up Federal Express's True Reason for Termination:**

95.     Federal Express's true reasons for terminating Anthony Johnson were (a) in retaliation for Anthony Johnson's going against Ricky Carter's wishes by electronically filing a workplace complaint against a White senior manager, (b) in retaliation for Anthony Johnson's objecting to Ricky Carter's and Federal Express's retaliatory and discriminatory practices, (c) in discrimination against Anthony Johnson as an African American man who Ricky Carter perceived to be a "trouble maker", and (d) in discrimination against Anthony Johnson as an African  American.

96.     The truth is that the NETtime system that Federal Express claims it terminated Anthony Johnson over was a system fraught with problems and flaws.

97.     The truth is that for at least 2 ½ years, Anthony Johnson and other managers under three different supervisors in the SPSS building used the NETtime system in the same manner that he used it when he was terminated.

98.     The truth is that for at least 1 year, Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) used the NETtime system in the same manner that he used it when he was terminated.

99.     The truth is that for at least 2 ½  years, Anthony Johnson and other managers under three different supervisors in the SPSS building handled employee attendance and absenteeism in the same manner as was handled when Anthony Johnson was terminated.

100.    The truth is that for at least 1 year, Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) handled employee attendance and absenteeism in the same manner as was handled when Anthony Johnson was terminated.

101.    The truth is for all relevant times, Ricky Carter was fully aware of the manner and means upon which Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) used the NETtime system.

102.    The truth is for all relevant times, Patrick Elam was fully aware of the manner and means upon which Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) used the NETtime system.

103.    The truth is for all relevant times, Ricky Carter was fully aware of the manner and means upon which Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) handled and recorded employee attendance and absenteeism.

104.    The truth is for all relevant times, Patrick Elam was fully aware of the manner and means upon which Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) handled and recorded employee attendance and absenteeism.

105.    The truth is for all relevant times, Ricky Carter specifically directed, authorized, and approved (a) the manner in which Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) used the NETtime system and (b) the manner these managers handled and recorded employee attendance and absenteeism.

106.    The truth is that, at no time prior to April 2013, did Ricky Carter, Patrick Elam, nor

Federal Express ever object to or disapprove the manner in which Anthony Johnson (and other managers under Ricky Carter's and Patrick Elam's supervision) used the NETtime system, and at no time did Ricky Carter, Patrick Elam, nor Federal Express ever object to the manner in which Anthony Johnson (and other mangers) handled and recorded employee attendance and absenteeism.

107.    The truth is that, on several occasions, Ricky Carter specifically directed, instructed, and authorized Anthony Johnson (and other managers) not to count employees late.

108.    Ricky Carter's direction, authorization, and approval of the manner in which Anthony Johnson (and other mangers) (a) used the NETtime system and (b) handled and recorded employee attendance and absenteeism was common knowledge in the 2nd floor in the SPSS building.

109.    At all times relevant to this lawsuit, Ricky Carter knew that he had directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b) the way Anthony Johnson handled employee attendance and absenteeism.

110.    At all times relevant to this lawsuit, Federal Express knew or should have known that Ricky Carter directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b) the way Anthony Johnson handled employee attendance and absenteeism.

111.    Notwithstanding Ricky Carter's knowledge that he had directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b) the way Anthony Johnson handled employee attendance and absenteeism, Ricky Carter intentionally failed and refused to disclose this important fact to the Tennessee Department of Labor and Workforce Commission.

112.    Notwithstanding Ricky Carter's knowledge that he had directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b)

the way Anthony Johnson handled employee attendance and absenteeism, Ricky Carter intentionally failed and refused to disclose this important fact to the EEOC.

113.    Notwithstanding Patrick Elam's knowledge that Ricky Carter had directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b) the way Anthony Johnson handled employee attendance and absenteeism, Patrick Elam intentionally failed and refused to disclose this important fact to the Tennessee Department of Labor and Workforce Commission.

114.    Notwithstanding Patrick Elam's knowledge that Ricky Carter had directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b) the way Anthony Johnson handled employee attendance and absenteeism, Patrick Elam intentionally failed and refused to disclose this important fact to the EEOC.

115.    Notwithstanding Federal Express's knowledge that Ricky Carter had directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b) the way Anthony Johnson handled employee attendance and absenteeism, Federal Express intentionally failed and refused to disclose this important fact to the Tennessee Department of Labor and Workforce Commission.

116.    Notwithstanding Federal Express's knowledge that Ricky Carter had directed, approved and authorized (a) the manner in which Anthony Johnson used the NETtime system and (b) the way Anthony Johnson handled employee attendance and absenteeism, Federal Express intentionally failed and refused to disclose this important fact to the EEOC.

117.    Terminating Anthony Johnson for something that he was directed to do by his managers does not constitute a legitimate non-discriminatory reason for the adverse action taken.

118.    The truth is that Ricky Carter, Patrick Elam, and Federal Express do not have a legitimate non-discriminatory reason for terminating Anthony Johnson.

**Anthony Johnson's Step 1 GFTP:**

119.    Pursuant to Federal Express's internal EEO and Guaranteed Fair Treatment Procedure, on or about May 27, 2013, Anthony Johnson submitted to Federal Express a detail written statement demonstrating that:

a. He did not do anything wrong;

b. Patrick Elam should have conducted a more thorough audit; and that, if such complete audit were conducted, FedEx would learn that several managers had done the same thing;

c. Certain actions that he took were common among his peer managers;

d. For 2 ½ years, he had (1) handled certain processing of employees attendance, (2) managed and maintained employees punctuality, and (3) worked with the NETtime system in a certain manner without deviation and without objection from any of his supervisors who were well aware of these processes.

e. His supervisor, Senior Manager, Patrick Elam never explained his expectations regarding NETtime and that his (Patrick Elam's) expectations concerning NETtime were different from that of Ricky Carter.

f. Ricky Carter:

i)   Was well aware of the actions that he (Anthony Johnson) and other mangers took with respect to processing employee attendance, punctuality, and NETtime;

ii)  Had the discretion and capability to authorize these actions and processes;

iii) Requested Anthony Johnson and other managers to implement these processes; and

iv)  Approved and authorized these processes.

120.    In this written statement, Anthony Johnson also gave Federal Express several specific examples where Ricky Carter approved certain employees' attendance, punctuality, vacation, personal, and FH days.

121.   Notwithstanding Anthony Johnson's best efforts to during the Step 1 GFTP, Federal Express chose to uphold its decision to terminate him.

122.   Notwithstanding Anthony Johnson's best efforts to during the Step 1 GFTP, Federal Express chose to uphold its wrongful termination of Anthony Johnson.

**Anthony Johnson's Step 2 GFTP:**

123.   Pursuant to Step 2 of  Federal Express's internal EEO and Guaranteed Fair Treatment Procedure, on or about June 17, 2013, Anthony Johnson submitted to Federal Express a detail written statement pointing out that:

a.  The termination was clearly retaliatory;

b.  Federal Express action of bringing in a new senior manager (namely, Patrick Elam) was an attempt to make his termination not to appear retaliatory;

c.  He had listed the sequence of events that demonstrate harassment, unfair treatment, retribution, and retaliation during his Step 1 of the GFTP, and none of these items were addressed in FedEx's response letter from Cheri Theil;

d.  During his Step 1 GFTP, Cheri Theil was hostile to him;

e.  During his Step 1 GFTP, Cheri Theil harassed him about his stuttering when he could not answer her questions fast enough;

f.  He did not change anyone start time in the NETtime system.

g.  He had done nothing wrong and had not violated FedEx's policy;

h.  He had not falsified any electronic documents;

i.  He had never been counseled about any issue related to NETtime;

j.  There were no Warning Letters, Performance Reminders, or Written Counseling from Ricky Carter related to himself and the NETtime system;

k.  Throughout all relevant periods of time, Ricky Carter never issues to Anthony Johnson a warning letter for falsifying any electronic documents.

l.  The reason Ricky Carter never issued Anthony Johnson a warning letter pertaining to NETtime or falsifying electric documents is because Ricky Carter

knew that the manner in which Anthony Johnson handle NETtime and employee time records was in strict compliance with Ricky Carter's instructions, authorizations, and approval.

 m. He had been following the directions of his supervisor, Senior Manager Ricky Carter concerning the actions that he took related to NETtime;

124. In his Step 2 GFTP, Anthony Johnson also raised several questions that, to the date of the filing of this Complaint, Federal Express has failed and refused to address.

125. These questions, and Federal Express's refusal and failure to answer them demonstrate that Federal Express does not have any legitimate nondiscriminatory and non-retaliatory justifications for the adverse actions taken against Anthony Johnson and for terminating him.

126. Notwithstanding Anthony Johnson's best efforts during the Step 2 GFTP, Federal Express chose to uphold its decision to terminate him.

127. Notwithstanding Anthony Johnson's best efforts during the Step 2 GFTP, Federal Express chose to uphold its wrongful termination of Anthony Johnson.

**Anthony Johnson's Step 3 GFTP:**

128. Pursuant to Step 3 of Federal Express's internal EEO and Guaranteed Fair Treatment Procedure, on or about July 21, 2013, Anthony Johnson submitted to Federal Express a detail written statement that included all the information in Step 2 with additional information. *See Exhibit "A".*

129. Federal Express failed and refused to overturn the termination (a) notwithstanding all that Anthony Johnson had done to point out the wrongfulness in the company's actions and (b) notwithstanding the questions that Anthony Johnson raised concerning NETtime.

130. Notwithstanding Anthony Johnson's best efforts during the Step 3 GFTP, Federal Express chose to uphold its decision to terminate him.

131. Notwithstanding Anthony Johnson's best efforts during the Step 3 GFTP,

Federal Express chose to uphold its wrongful termination of Anthony Johnson.

**Tennessee Department of Labor and Workforce Development:**

132.   On or about May 30, 2013, Anthony Johnson filed for unemployment benefits through the Tennessee Department of Labor and Workforce Commission.

133.   Federal Express misrepresented to the Tennessee Department of Labor and Workforce Commission that Anthony Johnson had falsified time records in Federal Express's time keeping system and was terminated for conduct.

134.   This was not the true reason for terminating Anthony Johnson for Ricky Carter, Patrick Elam, and Federal Express were all fully aware that Anthony Johnson used the company's time keeping system as directed, approved and authorized by Ricky Carter.

135.   On or about June 21, 2013, the Tennessee Department of Labor and Workforce Commission sent Anthony Johnson a letter denying his unemployment benefits citing that the claimant was discharged for falsifying employee time-cards and that the claimant's action encouraged tardiness and absenteeism and prevented disciplinary action from occurring.

136.   On or about June 27, 2013, Anthony Johnson filed an appeal to the Tennessee Department of Labor and Workforce Commission's denial of his unemployment benefits.

137.   On or about August 26, 2013, an Appeals Tribunal was convened to hear Anthony Johnson's appeal.

138.   The Appeals Tribunal ruled that:

   a. The evidence fails to establish the claimant knowingly violated policy or intended harm to the employer.

   b. The claimant performed the job duties to the best of his ability.

   c. The claimant's testimony was based upon direct, firsthand evidence, and it is afforded more weight than that of the employer's representative, who had little or

no direct, firsthand knowledge of the events.

d. There is insufficient evidence the claimant intended harm or intentionally violated policy in this case.

e. Simple negligence without harmful intent is not misconduct, nor is inefficiency, unsatisfactory conduct that is beyond the claimant's control, or good faith error of judgment or discretion. *See Exhibit "B".*

**Equal Employment Opportunity Commission Charge:**

139.   Anthony Johnson's grievance through FedEx's internal grievance process was completed and fully exhausted as of January 6, 2014.

140.   On or about January 21, 2014, Anthony Johnson filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that he was a victim of race discrimination and retaliation by Federal Express.

141.   On or about March 11, 2014, Federal Express responded to EEOC with the same misrepresentation that it made to the Tennessee Department of Labor and Workforce Commission, namely that Anthony Johnson had falsified time records and was terminated for conduct.

142.   Federal Express failed to inform EEOC  that Anthony Johnson kept time records was in accordance with what he and other managers were directed, authorized, and approved to do by Senior Manager Ricky Carter.

143.   On or about April 7, 2014, the EEOC issued Anthony Johnson a Right to Sue Letter.

144.   Anthony Johnson did not receive this letter until sometime thereafter.

**Federal Express Support of Adverse Actions Taken Against Anthony Johnson**:

145.    Throughout all time relevant to this lawsuit, Federal Express sanctioned, supported, ratified, and/or authorized the actions taken against Anthony Johnson by Ricky Carter and Patrick Elam.

146.   At no time has Federal Express ever admonished, written up, counselled, or reprimanded Ricky Carter for the any action that he took against Anthony Johnson.

147.   At no time has Federal Express ever admonished, written up, counselled, or reprimanded Patrick Elam for the any action that he took against Anthony Johnson.

148.   At no time did Federal Express ever properly and thoroughly investigate the adverse actions taken against Anthony Johnson by Ricky Carter.

149.   At no time did Federal Express ever properly and thoroughly investigate the adverse actions taken against Anthony Johnson by Patrick Elam.

## WRONGFUL DISCHARGE GENERAL

**150.**   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

151.   Plaintiff, Anthony Johnson, is a member of a protected class based on race.

152.   Defendants do not have a non-discriminatory legitimate basis for terminating Anthony Johnson.

153.   Anthony Johnson was told that he was being terminated for changing employees' NETtime scheduled start time to match their actual clock-in time.

154.   This was a pretext to cover up the Defendants' illegal reasons for terminating Anthony Johnson which were for discriminatory and retaliatory purposes.

155.   The termination of Anthony Johnson was wrongful and in violation of his civil rights.

156.   Anthony Johnson has suffered damages from the actions taken against him.

## FEDEX IS SUBJECT TO TITLE VII OF THE CIVIL RIGHTS ACT

157.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

158.   Federal Express employs more than 500 employees.

159.   Federal Express has engaged in a continuing pattern and course of discriminatory conduct against Plaintiff, Anthony Johnson because of his race (African-American).

160.   Federal Express has engaged in a continuing pattern and course of discriminatory conduct against Plaintiff, Anthony Johnson in creating a racially hostile and offensive work environment.

161.   Defendants engaged in the conduct described above with malice and/or reckless disregard for Plaintiff's rights under Title VII, as amended.

162.   Defendants have failed to follow Federal Express's policies and procedures relating to correcting discrimination and unfair treatment.

163.   Defendant failed to follow its policies and procedures relating to investigating and resolving this matter involving race discrimination.

164.   Anthony Johnson has suffered damages from the actions taken against him.

## RACE AND COLOR DISCRIMINATION

165.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

166.   Defendant-Carter, Defendant-Elam, and Federal Express, by and through Federal Express's employees, and agents intentionally engaged in unlawful employment practices involving the Plaintiff because of his race and color - African American.

167.   Defendant-Carter, Defendant-Elam, and Federal Express, by and through Federal Express's employees and agents, violated the Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as Amended.

168.   Defendant, Federal Express, by and through Defendant's agents, also violated the Plaintiff's rights under 42 U.S.C. Section 1981and 42 U.S.C. Section 2000e (2)(a).

169.   Federal Express further refused to remove Anthony Johnson from the hostile

work environment that he had been forced to work under.

170.    Defendants treated Anthony Johnson differently from White employees.

171.    Defendant, Federal Express, by and through its agents, discriminated against the Plaintiff on the basis of race and color with malice or with reckless indifference to the protected rights of the Plaintiff.

172.    The discrimination against Anthony Johnson was on the basis of both disparate treatment and disparate impact.

173.    Anthony Johnson has suffered damages from the actions taken against him.


## RETALIATION

174.    The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

175.    Section 704(a) of Title VII, as amended 42 U.S.C. § 2000e-3(a) protects employees from retaliation brought on by employers under two theories: (1) participating in a statutory protected activity or (2) opposing a company's practices.

176.    Defendant-Carter, Defendant-Elam, and Federal Express by and through its employees, managers, supervisors and agents, instituted a campaign of retaliation against Anthony Johnson for reporting work place violence, objecting to Ricky Carter's and Federal Express's discriminatory practices, and for reporting other acts of discrimination and discrimination related activities as stated herein.

177.    Some, but not all of the retaliations taken against Anthony Johnson were as follows:

   a. Because Anthony Johnson was one of the best trainers at the Memphis Hub, Ricky Carter assigned Leslie Morgan-Cox (an African American female) to be trained by Anthony Johnson.   In fact, Ricky Carter told Leslie Morgan-Cox to shadow Anthony Johnson because he was a good manager.

    i)   However after Ricky Carter became upset with Anthony Johnson and after Anthony Johnson filed his internal EEO and GFTP, in retaliation against Anthony Johnson, Ricky Carter told Leslie Morgan-Cox to stay away from Anthony Johnson.

b.  Ricky Carter would not have told Leslie Morgan-Cox to stay away from Anthony Johnson if Anthony Johnson had not filed a workplace violence complaint against Joe Russell and had Anthony Johnson not filed his internal EEO and GFTP against Ricky Carter.

c.  Ricky Carter called Anthony Johnson a "trouble maker" because he had reported Kristi Flower, a White Federal Express manager, for smoking in the ladies' restroom against company policy.

d.  Ricky Carter told Anthony Johnson's peer manager, Rickey Hobson that Anthony Johnson was a "trouble maker."

e.  Ricky Carter repeatedly wrote Anthony Johnson up for things that he would not have wrote him up for had Anthony Johnson not filed a workplace violence complaint against Joe Russell and had Anthony Johnson not filed his internal EEO and GFTP against Ricky Carter.

f.  On or about December 12, 2012, Ricky Carter issued Anthony Johnson another Performance Reminder (Write Up).  However, this one was overturned in step one of FedEx's GFTP process. Contrary to FedEx's policies and in continued retaliation against Anthony Johnson, Ricky Carter failed and refused to remove this Write-Up from Anthony Johnson's PRISM file.

g.  A hostile work environment was created by Ricky Carter, whose communication, actions, and behavior altered the terms, conditions, and reasonable expectations of a comfortable work environment for Anthony Johnson.

h.  Ricky Carter started bullying Anthony Johnson in front of his employees.

i.  Ricky Carter changed Anthony job duties. Anthony was no longer the trainer for

new hires.

j.  Mysterious shift change – Ricky Carter made Anthony stay at work until 6:00am.

k.  Wrongfully terminated Anthony Johnson.

178.  This retaliation was and is due to Plaintiff exercising his rights by opposing Federal Express's and Ricky Carter's discriminatory and retaliatory practices.

179.  Anthony Johnson suffered damages for which he herein sues.

## NEGLIGENT HIRING, SUPERVISION AND TRAINING BY FEDERAL EXPRESS

118.  The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

119.  Federal Express's conduct constituted negligent hiring, supervision and training.

120.  Defendant Federal Express did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Ricky Carter and Patrick Elam were unfit, incompetent, or inappropriate to manage and supervise Anthony Johnson given the circumstances.

121.  Had Federal Express done this, it would not have been able to terminate Anthony Johnson on the issues related to NETtime and employee attendance.

122.  This is because all of Anthony Johnson's actions were taken in strict compliance with Ricky Carter's instructions and approval.

123.  Additionally, with respect to the NETtime system, prior to terminating Anthony Johnson, Federal Express should have trained and supervised Ricky Carter on the use and management of the NETtime system.

124.  Moreover, Federal Express should have restricted Ricky Carter from instructing Anthony Johnson (and other managers) to use the NETtime system in the manner that he instructed if the company was against such process.

125.   Federal Express should not have terminated Anthony Johnson for following Ricky Carter's instructions regarding the use of the NETtime system, and Federal Express should not have terminated Anthony Johnson for following Ricky Carter's instructions regarding the manner in which to keep employee time records.

126.   Defendant Federal Express knew or should have known that Ricky Carter and Patrick Elam were unfit and could foresee that these individuals would come in contact with Anthony Johnson, creating job related hostilities toward Anthony Johnson.

127.   Defendant Federal Express's failure to exercise reasonable care in the supervision, management and training of Ricky Carter and Patrick Elam was the proximate cause of damages to Anthony Johnson for which he hereby sues.

## BREACH OF GOOD FAITH AND FAIR DEALING

125.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

126.   Federal Express owed a duty of good faith and fair dealing to Anthony Johnson.

127.   Federal Express breached its duty of good faith and fair dealing to Anthony Johnson by taking the adverse actions as set forth herein among other adverse actions.

128.   Anthony Johnson suffered damages as a result of Defendant Federal Express's breach of its duty of good faith and fair dealing for which Anthony Johnson herein sues.

## FRAUDULENT AND NEGLIGENT MISREPRESENTATION

129.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

130.   Defendant-Carter made representations to Anthony Johnson regarding the use of NETtime and the handling of issues regarding employee punctuality that were material to Anthony Johnson's employment, career and advancement.

131.   Specifically, Ricky Carter made certain representations to Anthony Johnson regarding the use of NETtime and the manner in which to record employee attendance and absenteeism.

132.   In fact, on a number of occasions, Ricky Carter specifically instructed Anthony Johnson (and other managers) not to "count [certain employees] late."

133.   Ricky Carter made these representations with the expectation that Anthony Johnson (and other managers) (a) accept these representation as true and (b) acceptable to Federal Express.

134.   As statements made by their senior manager, it was reasonable for Anthony Johnson (and other managers) to treat Ricky Carter's representations as true and acceptable to the company.

135.   Ricky Carter representations about NETtime and employee time record keeping were false when made.

136.   Ricky Carter knew or should have known that his representations to Anthony Johnson (and other managers) were false when made.

137.   At no time did Ricky Carter ever take any action to correct his misrepresentations.

138.   When Defendant-Carter made the representations, he knew the representations were false and/or made the representations recklessly, as a positive assertion, without knowledge of its truth.

139.   Defendant-Carter made these representations with the intent that Anthony Johnson act on them.

140.   Anthony Johnson reasonably relied on the representations.

141.   Anthony Johnson was injured by the false representations for which Anthony Johnson herein sues.

## HOSTILE WORK ENVIRONMENT

136.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

137.   Federal Express, by and through its employees and/or agents, with actual malice subjected Anthony Johnson to a hostile work environment.

138.   Anthony Johnson suffered damages for which Anthony Johnson herein sues.

## SUPERVISOR HARASSMENT

139.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

140.   Defendant-Carter, Defendant-Elam, and Federal Express, by and through its employees and/or agents, with actual malice harassed Anthony Johnson.

141.   Anthony Johnson has suffered damages and injury as a result of such harassment for which he herein sues.

## DEFAMATION OF CHARACTER

142.     The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

143.      Federal Express, by and through its employees and/or agents, with actual malice published and/or made false statements of fact referring to Anthony Johnson which defamed Anthony Johnson's character, injured his reputation and has (or can) affected Plaintiff's ability to find new permanent employment.

144.   Specifically, Federal Express made representations that Anthony Johnson falsified employee records and misused the company's NETtime system.

145.   Ricky Carter, Patrick Elam, and Federal Express knew that these statements about Anthony Johnson were false.

146.   Ricky Carter, Patrick Elam, and Federal Express knew that such false statements about Anthony Johnson could result in his being terminated and could impact his ability to find future employment.

147.   Nevertheless, Federal Express, with Ricky Carter's and Patrick Elam's full support, went forward with such untrue statements about Anthony Johnson.

148.   Anthony Johnson has suffered damages for which he herein sues.

## DAMAGES

145.      The proceeding paragraphs are hereby incorporated by reference as

though fully incorporated herein.

146.        Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

       a.    Actual damages related to adverse actions taken against the Plaintiff;

       b.    Court costs, and all reasonable and necessary Attorney's fees incurred by or on behalf of the Plaintiff;

       c.    Front pay and back pay from the date that the Plaintiff was terminated and interest on the back pay in an amount to compensate the Plaintiff as the Court deems equitable and just;

       d.    All reasonable and necessary costs incurred in pursuit of this suit;

       e.    All damages resulting from Defendant's violation of all laws related to this lawsuit.

       f.    Expert fees as the Court deems appropriate;

       g.    Investigation fees and costs;

       h.    Inconvenience;

       I.    Prejudgment interest;

       j.    Loss of enjoyment of life;

       k.    Loss of earnings in the past; and

       l.    Loss of benefits.

## EXEMPLARY DAMAGES

149.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

150.   Anthony Johnson would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff.

151.   In order to punish said Defendants for engaging in unlawful business practices

and to deter such actions and/or omissions in the future, Anthony Johnson also seeks recovery from Defendants for exemplary damages.

## **SPECIFIC RELIEF**

152.   The proceeding paragraphs are hereby incorporated by reference as though fully incorporated herein.

153.   Anthony Johnson seeks the following specific relief which arises out of the actions and/or omissions of Defendants described hereinabove:

a.   Prohibit by injunction the Defendants from engaging in unlawful employment practices;

b.   Reinstate all benefits to which Anthony Johnson was entitled, but for the unlawful employment actions of Defendants;

c.   Removal of all slanderous and incorrect notations from Plaintiff's employment file and to retract all slanderous statements that Federal Express has made concerning Anthony Johnson, and

d.   Reinstate Anthony Johnson as an employee with FedEx with all rights and benefits to which he is entitled.

154.   **PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Anthony Johnson,
respectfully prays that the Defendants be cited to appear and answer herein, and that
upon a final hearing of the cause, judgment be entered for the Plaintiff against
Defendants, for damages in an amount within the jurisdictional limits of the Court;
exemplary damages, as addressed to Defendants, together with interest as allowed by
law; costs of court; and such other and further relief to which the Plaintiff may be entitled
at law or in equity.


Respectfully submitted,


By:_____
Demetri Chambers
Attorney-in-Charge
Texas Bar No. 04072500
Shops at Waterview Park
150 E. Highway 67, Suite 248
Duncanville, TX 75137
Tel. (214)339-1490
Fax. (214)339-0194
**Attorney for Plaintiff**
**Anthony Johnson**